1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RAYMOND MCCOWAN,                    No.  2:21-cv-00369-JAM-CKD P

12            Plaintiff,

13       v.                             ORDER

14   L. MCKEOWN, et al.,

15            Defendants.

16   _____

17        Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights

18   action filed pursuant to 42 U.S.C. § 1983.  This proceeding was referred to this court by Local

19   Rule 302 pursuant to 28 U.S.C. § 636(b)(1).

20        On July 1, 2021, the court screened plaintiff's complaint and gave him the option of

21   proceeding on the Eighth Amendment excessive force claims against defendants McKeown,

22   Stephens, and Merrell.  ECF No. 9 at 6.  In the alternative, plaintiff could file an amended

23   complaint to fix the deficiencies identified in the screening order with respect to the remaining

24   defendants and claims.  ECF No. 9 at 6-7.  Plaintiff elected to file a first amended complaint

25   which is now before the court for screening.  ECF No. 22.

26        As plaintiff was previously advised, the court is required to screen complaints brought by

27   prisoners seeking relief against a governmental entity or officer or employee of a governmental

28   entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the

                                      1

1   prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon

2   which relief may be granted, or that seek monetary relief from a defendant who is immune from

3   such relief.  28 U.S.C. § 1915A(b)(1), (2).

4        **I.        Allegations in the First Amended Complaint**

5        At all times relevant to the allegations in the amended complaint, plaintiff was an inmate

6   at the California Medical Facility.  On March 1, 2018, plaintiff was attacked by another inmate.

7   Plaintiff alleges that when correctional officers McKeown and Stephens-Merrell responded, they

8   maliciously and sadistically sprayed him in the face with pepper spray even though he was being

9   choked from behind by the other inmate.[1]  Due to the use of pepper spray, plaintiff slipped and

10  injured his knee which required surgery to repair.  He still experiences pain in his knee and

11  requires a second surgery.  Plaintiff contends that these defendants violated the Eighth

12  Amendment's prohibition on the use of excessive force.

13       When plaintiff was taken to the medical clinic for his injuries, defendants Parreno and

14  Saeyang forcibly pulled on his left knee causing him extreme pain.  Although plaintiff states that

15  these nurses were attempting to treat his knee injury, he wanted to be seen by the doctor.  Both of

16  these defendants delayed his requests to see the doctor and to get an ice pack for the swelling in

17  his knee.  After 20 minutes, plaintiff received an ice pack.  Plaintiff's knee was examined by

18  Nurse Harris on March 2, 2018.  Defendant Harris violated CDCR policy by not reporting

19  plaintiff's injuries to her supervisor so that he could receive the necessary durable medical

20  equipment to help him walk.  While Dr. McAllister ordered an x-ray of plaintiff's knee on March

21  2, 2018, plaintiff alleges that defendant McAllister violated CDCR policy and was medically

22  negligent because he should have known that his injury was serious and required immediate

23  attention.  Dr. Ota refused to examine plaintiff after the x-ray and chose the wrong course of

24  treatment for plaintiff's left knee in conscious disregard of plaintiff's health.  Additionally,

25  defendant Ota never instructed custody staff to remove plaintiff from his upper tier housing

26

27  [1] In the amended complaint, plaintiff clarifies that defendant R. Stephens and R. Merrell are one
    in the same person.  ECF No. 22 at 2.  Therefore, the court refers to this defendant as Stephens-
28  Merrell.

assignment which further injured him.  Dr. Ikegbu violated CDCR policy and retaliated against plaintiff by not sending his medical records to an outside hospital in a timely manner.  As a result, plaintiff's knee surgery was delayed because plaintiff did not want them operating on the wrong knee.

Plaintiff additionally contends that defendants Lacebal, Lampl, Huntley, Fox, and Cueva covered up the use of excessive force by falsifying documents or failing to follow CDCR regulations.  According to plaintiff, defendants did not want to report the involvement of Stephens-Merrell because it would jeopardize her promotion.  Plaintiff also contends that defendant Hamamoto retaliated against him once he reported the use of excessive force by delaying plaintiff's transport to outside medical providers.

**II.     Legal Standards**

The following legal standards are being provided to plaintiff based on his pro se status as well as the nature of the allegations in his amended complaint.

**A.  First Amendment Retaliation**

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (citations omitted). Filing an inmate grievance is a protected action under the First Amendment.  Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).  A prison transfer may also constitute an adverse action.  See Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005) (recognizing an arbitrary confiscation and destruction of property, initiation of a prison transfer, and assault as retaliation for filing inmate grievances); Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (finding that a retaliatory prison transfer and double-cell status can constitute a cause of action for retaliation under the First Amendment).

**B.  Eighth Amendment Deliberate Indifference**

Denial or delay of medical care for a prisoner's serious medical needs may constitute a

1   violation of the prisoner's Eighth and Fourteenth Amendment rights.  Estelle v. Gamble, 429 U.S.

2   97, 104-05 (1976).  An individual is liable for such a violation only when the individual is

3   deliberately indifferent to a prisoner's serious medical needs.  Id.; see Jett v. Penner, 439 F.3d

4   1091, 1096 (9th Cir. 2006); Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Lopez v.

5   Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000).

6          In the Ninth Circuit, the test for deliberate indifference consists of two parts.  Jett, 439

7   F.3d at 1096, citing McGuckin v. Smith, 974 F.2d 1050 (9th Cir. 1991), overruled on other

8   grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).  First, the

9   plaintiff must show a "serious medical need" by demonstrating that "failure to treat a prisoner's

10  condition could result in further significant injury or the 'unnecessary and wanton infliction of

11  pain.'"  Id., citing Estelle, 429 U.S. at 104.  "Examples of serious medical needs include '[t]he

12  existence of an injury that a reasonable doctor or patient would find important and worthy of

13  comment or treatment; the presence of a medical condition that significantly affects an

14  individual's daily activities; or the existence of chronic and substantial pain.'"  Lopez, 203 F. 3d

15  at 1131-1132, citing McGuckin, 974 F.2d at 1059-60.

16         Second, the plaintiff must show the defendant's response to the need was deliberately

17  indifferent.  Jett, 439 F.3d at 1096.  This second prong is satisfied by showing (a) a purposeful act

18  or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the

19  indifference.  Id.  Under this standard, the prison official must not only "be aware of facts from

20  which the inference could be drawn that a substantial risk of serious harm exists," but that person

21  "must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  This "subjective

22  approach" focuses only "on what a defendant's mental attitude actually was."  Id. at 839.  A

23  showing of merely negligent medical care is not enough to establish a constitutional violation.

24  Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998), citing Estelle, 429 U.S. at 105-106.  A

25  difference of opinion about the proper course of treatment is not deliberate indifference, nor does

26  a dispute between a prisoner and prison officials over the necessity for or extent of medical

27  treatment amount to a constitutional violation.  See, e.g., Toguchi v. Chung, 391 F.3d 1051, 1058

28  (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  Furthermore, mere delay of

4

1   medical treatment, "without more, is insufficient to state a claim of deliberate medical

2   indifference." Shapley v. Nev. Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).

3   Where a prisoner alleges that delay of medical treatment evinces deliberate indifference, the

4   prisoner must show that the delay caused "significant harm and that Defendants should have

5   known this to be the case." Hallett, 296 F.3d at 745-46; see McGuckin, 974 F.2d at 1060.

6   **C.  CDCR Regulations**

7       The violation of state regulations, CDCR rules and policies, or state law is not sufficient to

8   state a claim for relief under § 1983.  To state a claim under § 1983, there must be a deprivation

9   of a federal constitutional or statutory right.  See Paul v. Davis, 424 U.S. 693 (1976).

10  **III.  Analysis**

11      After conducting the required screening, the court finds that plaintiff may proceed on the

12  Eighth Amendment excessive force claims against defendants McKeown and Stephens-Merrell.

13  However, the remaining allegations fail to state any cognizable claim against the remaining

14  defendants.  While plaintiff alleges that defendants Hamamoto and Ikegbu retaliated against him

15  for filing grievances, he does not allege that their conduct chilled his First Amendment rights or

16  that defendants' actions did not advance a legitimate correctional goal.  See Rhodes, 408 F.3d at

17  567-68.  Therefore, he does not sufficiently plead a First Amendment retaliation claim against

18  defendants Hamamoto and Ikegbu.  Plaintiffs' assertions that numerous defendants violated

19  CDCR policy are simply not actionable in a § 1983 suit.  See Paul, 424 U.S. 693.  While

20  plaintiff's amended complaint demonstrates a serious medical need, the factual allegations against

21  the medical defendants establish a delay in care or a difference of opinion about the proper course

22  of treatment for his knee injury.  As was explained in the court's prior screening order, this does

23  not rise to the level of an Eighth Amendment deliberate indifference claim.  See Toguchi v.

24  Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

25  Based on these deficiencies in the remaining claims and defendants, plaintiff will be granted leave

26  to file a second amended complaint should he decide that he does not want to immediately

27  proceed on the excessive force claims found cognizable against defendants McKeown and

28  Stephens-Merrell.

**IV.   Plain Language Summary for Pro Se Party**

The following information is meant to explain this order in plain English and is not intended as legal advice.

Some of the allegations in the amended complaint state claims for relief against the defendants, and some do not.  You must decide if you want to (1) proceed immediately on the Eighth Amendment excessive force claims against defendants McKeown and Stephens-Merrell; or, (2) amend the complaint to fix the problems identified in this order with respect to the remaining claims and defendants.  Once you decide, you must complete the attached Notice of Election form by checking only one box and returning it to the court.

Once the court receives the Notice of Election, it will issue an order telling you what you need to do next.  If you do not return this Notice, the court will construe this failure as consent to dismiss the deficient claims and will order service of the complaint only on the claims found cognizable in this screening order.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff has the option to proceed immediately on the Eighth Amendment excessive force claim against defendants McKeown and Stephens-Merrell.  In the alternative, plaintiff may choose to amend the complaint one more time if he believes in good faith that it is possible to fix the deficiencies identified in this order with respect to the remaining claims and defendants.

2. Within 21 days from the date of this order, plaintiff shall complete and return the attached Notice of Election form notifying the court whether he wants to proceed on the screened amended complaint or whether he wants time to file a second amended complaint.

3. If plaintiff fails to return the attached Notice of Election within the time provided, the court will construe this failure as consent to dismiss the deficient claims and proceed only on the cognizable claims identified in this screening order.

Dated:  January 26, 2022

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

RAYMOND MCCOWAN,

     Plaintiff,

v.

L. MCKEOWN, et al.,

     Defendants.

No.  2:21-cv-00369-JAM-CKD

NOTICE OF ELECTION

**Check only one option:**

_____ Plaintiff wants to proceed immediately on the Eighth Amendment excessive force claims against defendants McKeown and Stephens-Merrell.  Plaintiff voluntarily dismisses the remaining claims and defendants.

_____ Plaintiff wants time to file a second amended complaint.

DATED:

_____
Plaintiff